UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY WOODS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2032** |
| **N. BURL CAIN, WARDEN** | **SECTION "C"** |

**ORDER AND REASONS**

This matter is before the Court on a petition for writ of habeas corpus by Terry Woods, seeking relief pursuant to 28 U.S.C. § 2254. The petitioner raises two claims for relief from his June, 1998 conviction of one count of attempted second degree murder. Upon a thorough review of the trial, direct appeal, and post-conviction records, the habeas petition, response, memoranda, and applicable law, the Court has determined that petitioner's habeas corpus petition is without merit. For the reasons set forth below, this petition is DENIED WITH PREJUDICE.

I. BACKGROUND AND PROCEDURAL HISTORY

The petitioner is a prisoner of the state confined to the Louisiana State Penitentiary in Angola, La. Fed. Rec. Doc. 1  He filed this federal application for writ of habeas corpus dated March 1, 2006. *Id*. at 26. After trial, petitioner was found guilty of one count of attempted

second degree murder in the Criminal District Court for the Parish of Orleans, State of Louisiana on June 22, 1998.  Verdict sheet and Trial Tr. at 206, State Rec. Vol. 2.  A multiple bill hearing was held on November 25, 1998, at which the court adjudicated petitioner a triple offender, and sentenced to life imprisonment. Hearing Tr. at 4-5, State Rec. Vol. 2.  On January 28, 1999, petitioner pled guilty to one count of manslaughter with an *Alford* plea,[1] and was sentenced him to forty years concurrent with the sentence on the attempted murder count.[2]  Sentencing Tr., State Rec. Vol. 2.

The following facts are taken from the Statement of Facts of the Louisiana Court of Appeal, Fourth Circuit :

> At approximately 6:00 p.m. on October 31, 1996, as Simone Alfred and the victim, Keshawn Walker, stood conversing on the corner of Third and Galvez Streets, a male suspect approached the victim and shot him in the head. Sharon Winchester, who lived around the corner on Miro Street, heard the gunshots and flagged down William Mims, a reserve officer with the NOPD. While Ms. Winchester and Officer Mims spoke, a man ran past them, holding a gun in his pants pocket. Officer Mims pursued the suspect by car, identified himself as an officer, and ordered the suspect to stop. When Officer Mims exited his vehicle, the defendant began shooting at him.
>
> Officer Walter Zscheidrich responded to a call of "police officer in shoot out" at the intersection of Miro Street and Washington Avenue. When he arrived on the scene, Officer Zscheidrich spoke with Officer Mims, who told officers that his assailant was wearing a white shirt and pants, and fled into a nearby alley. NOPD officers searched the area, and found the shirtless defendant lying on the

---

[1] *See North Carolina v. Alford*, 40 U.S. 25 (1970).

[2] The jury could not reach a verdict at trial on a charge of one count of second degree murder, and it was on this count that petitioner plead to one count of manslaughter.

> ground in an adjacent church alley. The officers also found the defendant's bloodstained pants on top of a nearby shed. Minutes after the shoot out, Officer Mims positively identified the suspect who shot at him. Approximately one month after the shooting, Ms. Alfred identified the defendant, Terry Woods, aka Alphonse Desmond as the man who shot and killed the victim. Three days after the homicide, officers recovered the murder weapon from a hole in the wall of the church adjacent to the alley in which the defendant was apprehended.
>
> Dr. Paul McGargy, the Coroner's Office forensic pathologist, testified that the victim died of three bullet wounds one to his head, neck and shoulder. Dr. McGargy retrieved the bullets during the autopsy and also discovered three packets of cocaine in the victim's mouth.

*State v. Woods*, 2000-KA-2712, (La.App. 4 Cir. 5/29/02), 828 So.2d 6.

Petitioner appealed to the Louisiana Court of Appeal, Fourth Circuit, urging three assignments of error: 1) that the evidence was insufficient to prove specific intent to kill; 2) that because the cleansing period between petitioner's two prior convictions had expired the court erred in finding him to be a triple offender; and 3) that the prosecution allowed a witness to provide testimony that the state knew or should have known was perjured.[3]  State Rec. Vol. 1. The Louisiana First Circuit affirmed his conviction and sentences on May 29, 2002 and denied an application for rehearing on September 11, 2008.  State Rec. Vol. 1; *Woods*, 828 So.2d at 13. The Louisiana Supreme Court denied petitioner's subsequent application for supervisory and/or remedial writs without reasons on January 30, 2004.  State Rec. Vol. 1.

---

[3] The first two issues were raised in a brief prepared by counsel.  State Rec. Vol. 1.  The third, along with a reiteration and expansion of the first, were raised in a *pro se* supplemental brief after the Fourth Circuit granted petitioner's motion to supplement on January 26, 2001.  State Rec. Vol. 1.

Petitioner filed an application for post-conviction relief in the state trial court, signed March 31, 2004, raising one claim for relief, that discrimination in the grand jury selection rendered the trial court's jurisdiction over the charge offense illegal.  State Rec. Vol. 3 and 4.  The trial court denied his application on June 30, 2004.  State Rec. Vol. 3   The Louisiana Fourth Circuit denied his writ application on September 24, 2004, *id.*, and the Louisiana Supreme Court denied his subsequent writ application on August 19, 2005.  *Id.*  Thereafter, petitioner filed the instant petition for writ of habeas corpus in federal district court, signed March 1, 2006.

## II.  PROCEDURAL REVIEW

### *A. Custody Requirement*

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a).  Physical incarceration satisfies the custody requirement.  *See e.g., Maleng v. Cook*, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989).  Here, petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, pursuant to the conviction he is attacking.  Rec. Doc. 1.  Accordingly, this condition of the Court's subject matter jurisdiction over petitioner's claim for relief is satisfied.

### *B. Venue*

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the petitioner is incarcerated or the district from which his conviction or sentence was obtained.  Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b).  However, petitioner was convicted and sentenced in Orleans Parish, which under 28 U.S.C. §

98(a) falls within the Eastern District of Louisiana.  Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### *C. Exhaustion*

The State concedes that petitioner's claims are exhausted.  Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973).  To satisfy the exhaustion requirement, the entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982).  It is important to note that the issues in a habeas petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).  The requirement of exhaustion is now codified by 28 U.S.C.§ 2254(b)(1), which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State . . . ."  The other statutory provisions providing exceptions to the exhaustion rule are inapplicable here.

Petitioner presents two claims for review in his federal habeas petition.  These claims

were raised in his application for writs of certiorari and review to the Louisiana Supreme Court on his direct appeal.[4]

### *D. Timeliness*

The state submits that the petition is timely, and after reviewing the record the Court agrees. The Anti-terrorism and Effective Death Penalty Act of 1996[5] (AEDPA) requires that a habeas petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes final.[6] AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). "A properly filed application is one submitted according to the state's procedural requirements, such as the rules

---

[4] The state correctly notes that the two claims presented in his federal habeas petitioner are essentially the same claim, and were raised as his claim of insufficiency of the evidence on direct review.

[5] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[6] 28 U.S.C.§ 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (*quoting Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).  Finally, out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner.  *See, e.g., Navarre v. Stalder,* 2007 WL 1702774, *5 (E.D.La. 2007).

"[F]inality attaches when [the United States Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (reaching the same conclusion regarding "finality."). A petitioner has ninety days to file a writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court.  SUP. CT. R. 13(1).

Here, the state recognizes that petitioner's conviction and sentence became final 90 days after January 30, 2004, the date on which the Louisiana Supreme Court denied his writ or certiorari for review of the Fourth Circuit's judgment affirming the conviction and sentence.  *See Clay*, 537 U.S. at 527.  (The state's count puts the date his conviction became final, when petitioner's one year period for seeking federal habeas corpus relief commenced, at April 30, 2004.  The Court counts the period as running from April 29, 2004.  The one day difference makes no difference in the ultimate finding that the petition is timely).  The state notes that the record shows that petitioner timely filed his application for post-conviction relief sometime prior to June 30, 2004, when the trial court denied relief, but states that it is unable to decisively determine the date the application was filed, because the "copy contained within the Assembled

State Court Records is not dated." Rec. Doc. 15 at 3.  The record contains two copies of his application, in State Rec. Vols. 3 and 4, one of which is unsigned.  However, the copy of the application in Volume 4 was signed on March 31, 2004.  Accordingly, petitioner appears to have filed his post-conviction relief application prior to the time his period for filing a petition for writ of certiorari in the United State Supreme Court expired.  Therefore, none of his one-year period had elapsed when he filed his application for post-conviction relief.   One-hundred and ninety four days elapsed between the time the Louisiana Supreme Court denied his writ application from denial of post-conviction relief, on August 19, 2005,  and when he filed the instant petition. The instant federal habeas petition was filed considerably before his 365 days had elapsed. Therefore, the Court finds that the petition is timely filed under AEDPA.

III.  PETITIONER'S CLAIMS

*A. Standard of Review*

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for habeas petitions. The statute now provides that if a state court has adjudicated a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

8

United States." 28 U.S.C.§ 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

### *B. Petitioner's Claims*

Petitioner raises the following claims in his petition:

1. Whether the evidence was sufficient to support a conviction of attempted second degree murder; and

2. Whether the jury verdict was contrary to the evidence and the law.

Petitioner raised these claims on direct appeal, although as the state notes, the two claims are essentially the same claim, which was raised as his claim of insufficiency of the evidence on direct review.

The State argues that petitioner is not entitled to relief because his claims were properly

9

determined by the state courts to be without merit.

### *Claims One and Two*

Petitioner's first and second claims raise essentially the same question of federal constitutional law: whether the evidence introduced at trial was sufficient to support the verdict, and in particular, whether there was evidence sufficient to meet the government's burden of proving specific intent to kill.

The Louisiana Fourth Circuit,[7] in reviewing this claim in petitioner's direct appeal, applied the appropriate "clearly established Federal law, as determined by the Supreme Court of the United States," the case of *Jackson v. Virginia*, 443 U.S. 307 (1979). This Court must defer to the state court's decision unless it was an unreasonable application of *Jackson*. Under *Jackson*, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* It is well established that a jury is free to choose among all reasonable constructions of the evidence. *U.S. v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992).

Petitioner correctly notes that under Louisiana law specific intent to kill is an essential element of the crime of attempted murder. LA.REV.STAT.§§ 14:27 and 30.1; *see State v. Butler*, 322 So.2d 189, 192 (La. 1975); *see also State v. Jarman*, 445 So.2d 1184, 1189 (La. 1984) ("The

---

[7] The Louisiana Supreme Court denied his subsequent writ application without reasons. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). Here, the opinion of the Louisiana Fourth Circuit is the last reasoned state court opinion.

gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal"). Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LA.REV. STAT. § 14:10(1); *State v. Carroll*, 670 So.2d 286, 288 (La.App. 3 Cir. 1996). Specific intent need not be proven as fact, but may be inferred from the circumstances present in the case and from the action of the criminal defendant. *Id.* at 289.

At trial, Officer William Mims, then an off-duty reserve officer with the New Orleans Police Department, testified that as he was driving up to his house, he was flagged down by his neighbor, Sharon Winchester, who told him she had heard shooting around the corner. Tr. Transcript at 179, State Rec. Vol. 2. As he returned to his car, she pointed to a man running down the street. *Id.* Mims testified the man was wearing all white and had a pistol sticking out of his pocket, which he was attempting to keep from falling out with his hand. *Id.* Mims and the man exchanged a look. *Id.* After following the man in his vehicle down the street, he grabbed his personal pistol and got out of his car, and said "Police, drop the gun." *Id.* at 180. Mims testified that the man "took a crouch position and started firing on me," *id.*, and was less than ten feet away from him. *Id.* at 184. Mims returned fire until he ran out of bullets, at which point he began to run to try to take cover. *Id.* at 180. The man advanced toward him and continued shooting. *Id.* at 180-181. Mims testified that he was afraid the man was going to shoot him in the back. *Id.* at 180. After the man got into Mims' car, he yelled again, "Police, get out of the vehicle." *Id.* at 181. (The keys were not in the car. *Id.*) The man ran and scaled a fence into an

alley, *id.*, which had one entrance in addition to the fence he had climbed over. *Id.* at 187. Mims testified that he ran into his house, called for help and grabbed his service weapon. *Id.* Mims testified that he had gotten a good look at the man. *Id.* at 183. Mims identified a man who was apprehended in the alley by the police shortly thereafter as the man who had shot at him, and testified at trial that the man was the defendant (now petitioner). *Id.* at 188.

Sharon Winchester testified that after she stopped Officer Mims and reported that she had heard shooting around the corner, she saw a man running by, wearing all white or all beige, and had a gun in his pocket. *Id.* at 28. "Billy [Officer Mims] drove down where he was and told him, police, halt. When he said that, the guy just went to firing." *Id.* at 29. She testified that she "couldn't see who shot first, but I think the guy shot first." *Id.* Detective Walter Zschiedrich, who responded to the scene, testified that he spotted the petitioner laying down in the alley wearing a pair of shorts and no shirt, after which the police arrested him. *Id.* at 43. The man was the only individual in the alley. *Id.* While still at the scene, Officer Mims positively identified the petitioner as the one who had shot at him. *Id.* The officers recovered white clothing from the top of a little shed right above where they apprehended the defendant. *Id.* at 44.

Petitioner claims that the trial transcript reflects that there was no physical or ballistic evidence to indicate that any shots were fired from petitioner and that the only evidence in the record is the statement of Officer Mims regarding the exchange of gunfire with petitioner. Rec. Doc. 1-2 at 3. However, the jury, to which credibility determinations are entrusted, could have reasonably credited Officer Mims' testimony and inferred from the circumstances that petitioner shot at him with the specific intent to kill. Mims testified that petitioner crouched down and

began shooting at him after Mims had identified himself as a police officer and ordered him to stop. The shooting occurred at relatively close range. Mims also testified that petitioner advanced and continued to shoot after Mims turned away in order to seek cover. The Louisiana Fourth Circuit identified the proper legal principles and analyzed petitioner's claim as follows:

> In this case, Officer Mims testified that the defendant fired upon him at the intersection of Washington Avenue and Miro Street. Officer Mims returned fire until he ran out of ammunition, forcing him to run for cover. He further testified that the defendant pursued him as he ran, continuing to shoot at him.
>
> Officer Bryan Winbush, the ballistics expert, testified that he tested four nine-millimeter casings retrieved from the Miro Street/Washington Avenue scene, and determined that the casings were fired from the murder weapon, which was the weapon recovered adjacent to the defendant's hiding place. It is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court's function is to determine the constitutional sufficiency of the evidence presented. *State v. Johnson,* 619 So.2d 1102, 1109 (La.App. 4 Cir. 5/13/93), *writ denied,* 625 So.2d 173 (La.10/1/93). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. *State v. Brumfield,* 93-2404 (La.App. 4 Cir.1994), 639 So.2d 312; *State v. Garner,* 621 So.2d 1203 (La.App. 4 Cir.1993), *writ denied,* 627 So.2d 661 (La.1993). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. *State v. Jones,* 537 So.2d 1244, 1249 (La.App. 4 Cir.1989); *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *Id.* A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. *State v. Vessell,* 450 So.2d 938, 943 (La.1984). Viewing the totality of the evidence in the light most favorable to the State, the jury could have found the defendant guilty of attempted second-degree murder. This assignment is without merit.

*Woods*, 828 So.2d at 10-11.  The Court finds that the state appellate court properly identified the governing legal principles, and reasonably concluded when viewing all of the evidence in the light most favorable to the prosecution, that a jury could have found that petitioner was guilty of committing attempted second degree murder, acting with the specific intent to kill.  Accordingly, the Court finds petitioner's claims to be without merit.[8]

IV. CONCLUSION

Having considered the petition, the record, and the applicable law, the Court determines that the petitioner has not established that his state conviction presents grounds for the relief requested.  Accordingly,

IT IS ORDERED that the petition of Terry Woods be hereby DENIED WITH

---

[8] Petitioner also contends in passing that the trial judge did not properly instruct the jury regarding the requirement of finding specific intent to kill in order to find petitioner guilty of attempted murder.  This argument was never raised before the state courts, and appears to be new to his federal petition.  If the Court were to construe this as a separate claim it would be an unexhausted claim, which would render this a "mixed" petition of both exhausted and unexhausted claims, which should therefore be dismissed.  *See Rose v. Lundy*, 455 U.S. 509 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005). However, the Antiterrorism and Effective Death Penalty Act of 1996 allows a federal court, in its discretion, to deny habeas relief on the merits of a claim, regardless of whether the applicant has exhausted state remedies.  *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998); 28 U.S.C. § 2254(b)(2).  If the Court construed petitioner's argument regarding improper jury instructions as a separate claim, it would deny the claim on its merits: the petitioner offers only an unsupported allegation that the trial court did not properly instruct the jury as to the requirement of finding specific intent to kill.  Rec. Doc. 1-2 at 4.  The record does not contain the transcript of the opening and closing arguments, or jury instructions, in their entirety.  However, the trial transcript does contain those portions of the opening arguments and jury instructions that contained an objection, including arguments and the rulings thereon.  Tr. Transcript at 4-5, 203-26, State Rec. Vol. 2.  (The record reflects that no objection was raised during closing arguments.  *Id.* at 206).  No objection was made to the jury instructions by the defense at trial on this ground (the record does reflect one objection to the judge's instructions on another ground, *id.* at 203-206), and although petitioner's appellate counsel raised the claim of insufficiency of the evidence of specific intent to kill on appeal, counsel made no argument regarding the propriety of the instructions.  The Court thus surmises that it is highly unlikely that there was error in the jury instructions.  In any event, petitioner has not met his burden of demonstrating error in his petition, and would therefore deny this claim on its merits if it were properly before Court.

PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this 13th day of May, 2008.

                                                  HELEN G. BERRIGAN
                                                  UNITED STATES DISTRICT JUDGE